**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALAN D. HALPERIN, as Litigation Trustee of the Instant Brands Litigation Trust, | Chapter 11 |
| *Plaintiff,* | Case No. 23-90716 (MI) (Bankr. S.D. Tex.) |
| | Adv. No. 25-01093-dsj (Bankr. S.D.N.Y.) |
| v. | District Ct. Case No. _____ |
| CORNELL CAPITAL LLC, CORNELL CAPITAL PARTNERS LP, CC WK CO- INVEST LP, AGATE INFORMATICS CORP., 4060288 CANADA INC., 7326998 CANADA INC., HENRY CORNELL, JUSTINE CHENG, RODRIGO BRAVO, YOUNGHOON PARK, ROBERT WANG, YI QIN, CHRISTOPHER LAROCQUE, BENOIT GADBOIS, NICHOLAS HEWITT, JEFFREY KIST, WILLIAM HESS, CATHERINE LANDMAN, KENNETH WILKES, LAWRENCE MCRAE, and JOHN DUBEL, | |
| *Defendants.* | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' JOINT MOTION TO WITHDRAW THE REFERENCE**</u>

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ....................................................................................................... ii

**PRELIMINARY STATEMENT** .................................................................................................. 1

**FACTUAL BACKGROUND** ........................................................................................................ 3

A.   Cornell Capital LLC's Acquisition of Instant Brands ......................................................... 3

B.   The UnSub Transaction ....................................................................................................... 4

C.   Non-Debtors Assign Their Purported Claims Against Defendants to the Trustee ................ 4

D.   The Adversary Proceeding .................................................................................................... 5

E.   The Case Is Transferred from the Bankruptcy Court for the Southern District of Texas to the District Court for the Southern District of New York .................................................................. 6

F.   The Case Is Then Automatically Transferred to the Bankruptcy Court Pursuant to the Standing Order of Reference ....................................................................................................... 9

**LEGAL STANDARD** .................................................................................................................. 10

**ARGUMENT** ............................................................................................................................... 10

I.   The Reference Should Be Withdrawn Under Section 157(d)'s "Permissive" Prong Because All *Orion* Factors Favor Withdrawal of this Post-Confirmation, Stand-Alone Adversary Proceeding Involving Private Claims Between Non-Debtors ...................................................... 10

   A.   The Bankruptcy Court Does Not Have Final Adjudicative Authority ............................ 10

      1.   No Party Has Consented to Final Adjudication by a Bankruptcy Court ..................... 11

      2.   The Trustee's Claims Involve Exclusively Private Rights ........................................... 11

      3.   This Case Is Not Resolvable by a Ruling on the Cornell Defendants' Proofs of Claim 14

   B.   The Trustee's Claims Are Legal, Not Equitable, In Nature ............................................ 14

   C.   Judicial Efficiency Favors the District Court Overseeing the Litigation......................... 15

   D.   There Is No Forum Shopping Here.................................................................................. 20

   E.   Withdrawal Would Not Affect Uniformity in the Administration of Bankruptcy Law ... 21

   F.   This Motion is Timely ..................................................................................................... 22

**CONCLUSION** ........................................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Design Strategies, Inc. v. Davis*,
  367 F. Supp. 2d 630 (S.D.N.Y. 2005)......................................................................... 15

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
  462 B.R. 457 (S.D.N.Y. 2011)............................................................................. 12, 16

*DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*,
  464 B.R. 587 (S.D.N.Y. 2012)................................................................................... 16

*Dynegy Danskammer, L.L.C.*,
  905 F. Supp. 2d (2012) ...................................................................................... 16, 21

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989).................................................................................................... 15

*Gumport v. Growth Fin. Corp. (In re Transcon Lines)*,
  121 B.R. 837 (C.D. Cal. 1990) ................................................................................. 19

*Hau Yin To v. HSBC Holdings PLC*,
  2017 WL 816136 (S.D.N.Y. Mar. 1, 2017) .............................................................. 16

*Holland America Insurance Co. v. Succession of Roy*,
  777 F.2d 992 (5th Cir. 1985) .................................................................................... 12

*In re Almac's, Inc.*,
  202 B.R. 648 (D.R.I. 1996)........................................................................................ 16

*In re Ben Cooper, Inc.*,
  896 F.2d 1394 (2d Cir. 1990).................................................................................... 12

*In re Celsius Network, LLC*,
  2025 WL 1040643 (S.D.N.Y. Apr. 8, 2025)....................................... 12, 17, 19, 21

*In re Coudert Bros.*,
  2011 WL 7678683 (S.D.N.Y. Nov. 23, 2011) ........................................................ 16

*In re FKF 3, LLC*,
  2016 WL 4540842 (S.D.N.Y. Aug. 30, 2016) ......................................................... 15

*In re General Teamsters, Warehousemen and Helpers Union Local 890*,
  124 F.3d 999 (9th Cir. 1997) ................................................................................... 19

*In re Green*,
  2012 WL 5050594 (D. Neb. Oct. 18, 2012) ............................................................ 13

*In re HHH Choices Health Plan, LLC*,
  2019 WL 1409712 (S.D.N.Y. Mar. 28, 2019) ......................................................... 15

*In re Lehman Bros. Holdings, Inc.*,
  480 B.R. 179 (S.D.N.Y. 2012)................................................................................... 12

*In re Lenders Abstract*,
  493 B.R. 385 (E.D.N.Y. 2013) ............................................................................ 16, 21

*In re Levine*,
  2012 WL 310944 (S.D.N.Y. Feb. 1, 2012).......................................................... 11, 16

*In re Money Centers of Am., Inc. v. Sherb & Co., LLP et al. (In re Money Centers of Am., Inc.)*,
  579 B.R. 710 (S.D.N.Y. 2016)................................................................................... 20

*In re Money Ctrs. of Am., Inc.*,
  579 B.R. 710 (S.D.N.Y. 2016)................................................................................ 16

*In re Orion Pictures Corp.*,
  4 F.3d 1095 (2d Cir. 1993)........................................................................... passim

*In re Rickels & Assocs., Inc.*,
  320 B.R. 513 (S.D.N.Y. 2005)................................................................................ 15

*In re the VWE Grp.*,
  359 B.R. 441 (S.D.N.Y. 2007)........................................................................ 13, 22

*Innovasystems, Inc. v. Proveris Scientific Corp.*,
  2013 WL 5539288 (D.N.J. Oct. 7, 2013)................................................................ 19

*Interconnect Tel. Serv., Inc. v. Farren*,
  59 B.R. 397 (S.D.N.Y. 1986).................................................................................. 22

*Khan v. Bd. of Dirs. of Pentegra Defined Contribution Plan*,
  2023 WL 6237862 (S.D.N.Y. Sept. 26, 2023)....................................................... 15

*Lehman Bros. Holdings Inc.*,
  2014 WL 3583089 (S.D.N.Y. July 18, 2014) .......................................................... 3

*M. Fabrikant & Sons, Inc. v. Long's Jewelers*,
  2008 WL 2596322 (S.D.N.Y. June 26, 2008) .......................................... 11, 22, 23

*Matter of O'Sullivan's Fuel Oil Co.*,
  103 B.R. 388 (D. Conn. 1989)................................................................................ 12

*McCord v. Papantoniou*,
  316 B.R. 113 (E.D.N.Y. 2004) ............................................................................... 15

*Mirant Corp. v. Southern Co.*,
  337 B.R. 107 (N.D. Tex. 2006)......................................................................... 12, 15

*Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*,
  295 B.R. 211 (D.N.J. 2003) ................................................................................... 19

*Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*,
  2001 WL 863552 (S.D.N.Y. July 27, 2001) ........................................................... 15

*Pereira v. Farace*,
  413 F.3d 330 (2d Cir. 2005)................................................................................... 15

*ResCap Liquidating Tr. v. RBC Mortg. Co.*,
  No. 14 CIV. 4457 AKH, 2014 WL 8103896 (S.D.N.Y. July 18, 2014).................... 14

*Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*,
  2021 WL 1978560 (S.D.N.Y. May 17, 2021) ....................................... 3, 14, 17, 23

*Scott v. AIG Prop. Cas. Co.*,
  2017 WL 1380607 (S.D.N.Y. Apr. 17, 2017).......................................................... 21

*Stern v. Marshall*,
  564 U.S. 462 (2011).......................................................................................... passim

*Tarzy v. Dwyer*,
  No. 18 CIV. 1456 (JFK), 2019 WL 132280 (S.D.N.Y. Jan. 8, 2019) ..................... 14

**Statutes and Rules**

11 U.S.C. § 544.......................................................................................................... 13

11 U.S.C. § 548 ............................................................................................................. 13

11 U.S.C. § 550 ............................................................................................................. 13

28 U.S.C. § 1412 .................................................................................................... 2, 7, 20

28 U.S.C. § 157(d) ............................................................................................ 10, 18, 22

Fed. R. Bankr. P. 5011 ................................................................................................. 10

Defendants Cornell Capital LLC, Cornell Capital Partners LP, CC WK Co-Invest LP, Henry Cornell, Justine Cheng, Rodrigo Bravo (collectively, the "Cornell Defendants"), Agate Informatics Corp., 4060288 Canada Inc., 7326998 Canada Inc., Robert Wang, Yi Qin, Christopher Larocque (collectively, the "Founder Defendants"), Benoit Gadbois, Nicholas Hewitt, Jeffrey Kist, William Hess, Catherine Landman, Kenneth Wilkes, Lawrence McRae, and John Dubel (collectively the "Former D&O Defendants," and together with the Cornell Defendants and the Founder Defendants, the "Defendants") respectfully submit this Memorandum of Law in Support of their Joint Motion to Withdraw the Reference from the United States Bankruptcy Court for the Southern District of New York in the above-captioned Adversary Proceeding brought by Plaintiff Alan D. Halperin, as Litigation Trustee of the Instant Brands Litigation Trust (the "Plaintiff" or the "Trustee").

## PRELIMINARY STATEMENT

This case does not belong in Bankruptcy Court. It is a post-confirmation suit centered around non-debtor claims of fraud, negligent misrepresentation, and tortious interference against other non-debtors. The claims are based on prepetition conduct, and Plaintiff has demanded a jury trial in District Court. The Trustee, as Plaintiff, chose to file his Complaint—which "expressly demands a jury trial and does not consent to a jury trial by the Bankruptcy Court"—nearly a year after the February 23, 2024, confirmation of Instant Brands' Chapter 11 plan. Ex. B, Complaint ¶ 51 ("Cplt.").[1] The court that confirmed the Chapter 11 plan—Judge Marvin Isgur of the Bankruptcy Court for the Southern District of Texas—saw no need for the Trustee's claims to proceed there and transferred them to this District in April 2025. There is no pending

---

[1] Unless otherwise noted, alphabetical exhibit references are to the June 6, 2025 Declaration of David Barillari ("Barillari Decl.").

reorganization to support. There are no overlapping adversary proceedings. The case is still at the pleading stage (no substantive rulings have been issued). Merits discovery is currently stayed, and the Trustee's own position is that the Bankruptcy Court may not conduct the trial under *Stern*: all eleven counts of the Trustee's complaint involve private rights, are legal in nature, and neither the Trustee nor the other parties have consented to final adjudication by the Bankruptcy Court.

By way of context, in November 2024, the Trustee filed this adversary proceeding in the Bankruptcy Court for the Southern District of Texas. On February 14, 2025, the Cornell Defendants filed a motion to transfer the case to the District Court for the Southern District of New York (the "Motion to Transfer"), to which the other defendants joined and consented. In that motion, the Cornell Defendants explained that if, instead, the case were transferred "to the Bankruptcy Court in the Southern District of New York . . . Defendants would subsequently move to withdraw" the reference. Ex. C, Memo. ISO Mot. to Transfer, Bankr. S.D. Tex. Adv. Dkt. No. 73, at 25 (Feb. 14, 2025). The Trustee vigorously objected to the Motion to Transfer, forcing the parties to undertake discovery relating to that motion, full briefing, and oral argument on March 27, 2025. At that oral argument, Judge Isgur stated that he intended to grant Defendants' motion under 28 U.S.C. § 1412, emphasizing there was no efficiency or bankruptcy-related benefit in keeping the case in Bankruptcy Court. Confronted with that prospect, the Trustee withdrew his opposition, and the case was transferred to the District Court for the Southern District of New York, after which it was then referred to the Bankruptcy Court under the District's Standing Order of Reference. This motion follows immediately from that Order, as previewed in the Cornell Defendants' prior Motion to Transfer.

The Motion to Withdraw the Reference should be granted: this case is a post-confirmation lawsuit, involves entirely private rights that are legal in nature,  and—as Judge Isgur observed—

2

will go to the District Court eventually, as Plaintiff insists. Judicial economy therefore favors the District Court adjudicating it now. Moreover, the Trustee's Complaint raises five non-core state law claims, two of which (its claims of fraud and tortious interference with contract) are *non-debtor* claims that were purportedly assigned to the Trustee outside of the bankruptcy proceedings. These tort and "[c]ontract disputes are the bread and butter of district courts; bankruptcy courts do not have any 'specialized knowledge' that 'will contribute to swifter resolution of the claims at issue'" here. *Roman Cath. Diocese of Rockville Ctr., New York v. Arrowood Indem. Co.*, 2021 WL 1978560, at *8 (S.D.N.Y. May 17, 2021) (quoting *Lehman Bros. Holdings Inc.*, 2014 WL 3583089, at *4 (S.D.N.Y. July 18, 2014)). The reference should therefore be withdrawn now so that this post-confirmation proceeding can be adjudicated efficiently and without unwarranted duplication of proceedings.

## FACTUAL BACKGROUND[2]

### A.    Cornell Capital LLC's Acquisition of Instant Brands

On March 29, 2019, Cornell Capital LLC ("Cornell Capital") became the majority owner of Instant Brands—maker of the Instant Pot pressure cooker—through a holding company, Instant Brands Acquisition Holdings Inc. ("TopCo"). Ex. B, Cplt. ¶¶ 17, 54. Two years later, on April 12, 2021, the Instant Brands operating company ("OpCo") entered into a $450 million Credit Agreement, as borrower. *Id.* ¶ 92. A portion of the loan proceeds was used that same month to fund a $206 million dividend to Instant Brands owners and to pay off existing debt. *Id.* ¶¶ 92, 166. The $450 million loan and its related transactions, including the dividend, are referred to in the Complaint as the "Dividend Recap." *See id.* ¶¶ 8, 18, 69, 81. The Trustee alleges that the lenders

---

[2] Because this case is at the pleading stage, the factual Background refers to allegations in the Complaint, without waiving any right to contest the Trustee's allegations and without waiving the the pending motions to dismiss, which challenges the legal sufficiency of those allegations.

under the Credit Agreement were fraudulently induced into participating in the Dividend Recap. *Id.* ¶¶ 265-271.

**B.**    **The UnSub Transaction**

The Plan of Reorganization in the Debtors' bankruptcy proceedings sets forth how in 2021 and 2022, multiple economic disruptions buffeted Instant Brands, including port closures in Asia, historically high inflation, increased interest rates, and lowered consumer sentiment. *See* Ex. A, Confirmation Order, at Exhibit A, pp.35–36 (Jan. 8, 2024). On January 10, 2023, Instant Brands' Chief Financial Officer, Nick Hewitt, "advised the Board that" $55 million was needed to meet the company's obligations. Ex. B, Cplt. ¶ 148. According to the Trustee's allegations, Instant Brands raised that amount on January 18, 2023, through a $55 million debt financing from Cornell Capital Partners LP; with that financing secured by a lien against certain Instant Brand assets that, as part of the transaction, had been transferred to wholly owned subsidiaries of Instant Brands (the "UnSub Transaction"). *Id.* ¶¶ 147, 184, 255. The Trustee alleges that the UnSub Transaction breached the Credit Agreement. *Id.* ¶¶ 16, 147-155.

**C.**    **The Bankruptcy Proceeding**

On June 12, 2023, Instant Brands entered bankruptcy. On February 23, 2024, the Bankruptcy Court for the Southern District of Texas entered the Confirmation Order approving Instant Brands' Joint Chapter 11 Reorganization Plan, with an effective date of February 27, 2024. *See* Ex. A, Confirmation Order, at 1. The Confirmation Order named Alan D. Halperin as the Trustee for the Instant Brands bankruptcy estate, overseeing the Instant Brands Litigation Trust. *See id.* at 29.

**D.**    **Non-Debtors Assign Their Purported Claims Against Defendants to the Trustee**

The Trustee asserts that on March 8, 2024, he entered into an assignment agreement, whereby lenders under the Credit Agreement (non-debtors in the bankruptcy) assigned their rights

(Ex. B, Cplt. ¶ 18), if any, to bring tort claims against the Defendants (also non-debtors) related to the "Dividend Recap" or "UnSub Financing Transaction." Ex. H, Trustee's Omnibus Response in Opposition to Defendants Motions to Dismiss in this Adversary Proceeding, at Exhibit 2 § 2 (Mar. 8, 2024). The assignment was entered outside the bankruptcy proceedings, was not ordered by the bankruptcy court, and is governed by New York law. *See id.* § 4.

### E.    The Adversary Proceeding

On November 13, 2024, the Trustee filed this adversary proceeding, asserting eleven causes of action. The gravamen of the Complaint is that the financing for the Dividend Recap was obtained by fraud or, in the alternative, negligent misrepresentation (Count 11) (Ex. B, Cplt. ¶¶ 5, 8, 12–13, 96–107, 124, 141–146, 264–71) and that, as a result, the Dividend Recap was a fraudulent transfer and illegal dividend (Counts 1–2, 4–5, 7) (*id.* ¶¶ 163–82; 195–210; 223–29). The Complaint further alleges that Cornell tortiously interfered with the lenders' rights under the Credit Agreement by causing Instant Brands to breach the agreement with the UnSub Transaction (Count 10) (*id.* ¶¶ 249–63), which the Trustee also claims to have been a fraudulent transfer (Counts 3, 4) (*id.* ¶¶ 183–202). The fraud, negligent misrepresentation, and tortious interference claims are brought pursuant to the alleged assignment that the Trustee procured outside of the bankruptcy.

The Trustee also alleges claims for breach of fiduciary duty by Instant Brands directors and officers arising from the Dividend Recap and UnSub Transaction, together with a claim that that Cornell aided and abetted those breaches (Counts 8–9). *Id.* ¶¶ 230–48.

In sum, the Complaint asserts seven claims for damages. He asserts five state law claims— fraud or negligent misrepresentation, tortious interference with contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and illegal dividend—and two fraudulent transfers under Title 11: one arising from the Dividend Recap and the other from the UnSub Transaction.

(While the Trustee divides his fraudulent transfer theories across six different counts, each is framed around either the Dividend Recap or the UnSub Transaction. *Id.* ¶¶ 164-222.) The Trustee's Complaint demands that this case be tried before a District Court. He "expressly demands a jury trial and does not consent to a jury trial by the Bankruptcy Court." *Id.*

**F.**   **The Case Is Transferred from the Bankruptcy Court for the Southern District of Texas to the District Court for the Southern District of New York**

On February 14, 2025, the Cornell Defendants moved to transfer venue from the Southern District of Texas to the Southern District of New York. In their Motion to Transfer (which was consented to by the other Defendants), the Cornell Defendants asked that the case be transferred to the Southern District of New York and stated their intention to "move to withdraw" the reference if the case was transferred to "the Bankruptcy Court for the Southern District of New York." Ex. C, Memo. ISO Mot. to Transfer, at 25 (Feb. 14, 2025). That same day, the Defendants each moved to dismiss the Complaint and together filed a joint motion to stay discovery pending the motion to transfer and the motions to dismiss. *See* Adv. Proc. No. 24-03232, ECF 71, 77, 81, 83 (Bankr. S.D. Tex. Feb. 14, 2025).

On February 18, 2025, Judge Isgur held a conference and, after hearing the parties' positions on discovery and scheduling, determined (1) to expedite the Motion to Transfer proceedings ahead of the motions to dismiss, (2) to permit only limited discovery relevant to the transfer motion, (3) and to "stay all other discovery until I get to the discovery motion or the judge in Manhattan gets to the discovery motion." Ex. D, Feb. 18, 2025 Hearing Tr., at 14:3–8; *see id.* at 25:17–25. Judge Isgur explained, "I just think ***it's a mistake to have two different judges worrying about this***. The calls are going to be nuanced . . . And I think just ***the world is better if we wait . . . to figure out who the judge is***." *Id.* at 26:3-12 (emphasis added).

Following that February 18 conference, merits discovery in these proceedings has been stayed since that conference. The motions to dismiss and motion to stay discovery have since been fully briefed and remain pending.

On March 27, 2025, Judge Isgur held oral argument on the Motion to Transfer. Judge Isgur explained on the record that he was inclined to grant the motion under 28 U.S.C. § 1412, which provides for transfer of "a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Specifically, Judge Isgur stated, during a colloquy with counsel for the Cornell Defendants: "I'm only going to rule under 1412, and I'm going to ignore the other arguments ***because if you win on 1412, which I think you're going to*** when I'm done with looking at everything, that it moots the other reasons for doing it." Ex. E, Mar. 27, 2025 Hearing Tr. 101: 18–21 (emphasis added). Judge Isgur also recognized that the case could not be finally adjudicated in Bankruptcy Court:

> FORMER D&O DEFENDANTS: If the plaintiff wanted to have this case tried in this court, there would not be a jury claim. ***But there is a jury claim. So this case was always going to a district court.***
>
> THE COURT: ***Yeah.***

*Id.* at 36:2–8 (emphasis added).

Judge Isgur also rejected the Trustee's argument that there was a benefit to having pre-trial proceedings adjudicated in bankruptcy court. In doing so, Judge Isgur emphasized that this case would ultimately be before a District Court judge and Plaintiff conceded that fact:

> PLAINTIFF: And ***for many of these claims, the bankruptcy issues, the bankruptcy policies are at their zenith***. So that's the—
>
> THE COURT: So—
>
> PLAINTIFF: —estate claims in—
>
> THE COURT: And I understand your argument well, I think, about taking the forum selection clause and enforcing it. ***I'm missing your***

> *argument when you tell me bankruptcy things are at their zenith.*
> *We're not trying this case. You demanded a jury. They're not*
> *going to consent. So what does that matter if they're at the zenith*
> *when we're not going to try it?*
>
> ….
>
> PLAINTIFF: But we want you interpreting the plan because you
> were involved with the plan. Right. *So we want this Court, who*
> *was involved*—
>
> THE COURT: *It's going to a district judge. You demanded a jury*
> *trial.*
>
> PLAINTIFF: Well, *yes.*

*Id.* at 62:13–63:24 (emphasis added).

The Trustee additionally argued that the case should remain with Judge Isgur because certain of the arguments in the Motion to Dismiss invoked the Debtor-in-Possession Financing Order and Confirmation Order that had been entered in the Southern District of Texas. At the conclusion of the oral argument, Judge Isgur emphasized that he believed the Cornell Defendants would "win" on the motion and he proposed, as a compromise, a "bifurcation" of the adversary proceeding: Judge Isgur would address any motion to dismiss arguments that turned on his the prior orders in the bankruptcy; then he would transfer any aspect of the proceedings that remained. *Id.* at 101:18–103:25. He then asked the Trustee's counsel if he would object to that bifurcation:

> THE COURT: Why don't we do this? We've been here a long time
> this morning. Let's come back in 30 minutes, and that'll give you a
> chance to talk to your client.

*Id.* at 104:3-5. The argument was then paused so that the Trustee's attorney could confer with his client. *See id.* at 102:14–19 (Judge Isgur stating that "doing it the way that I'm suggesting is in the [T]rustee's best interest . . . . y'all could do an agreed order that does all of this, which I think might help your client."). Following that recess, the Trustee withdrew his opposition to transfer, explaining that he believed proceeding entirely in one court would be most efficient:

> So, Your Honor, you asked me to consult with the client related to whether or not we would agree to your plan or if we would have an objection to your plan. And I think, you know, having consulted with the trustee, the trustee, you know, his principal focus here is efficiently prosecuting these actions. And obviously, the trust has limited resources to do that. And so having heard what you said about keeping just a few of the issues here and then transferring, ***the trust has decided that it's in the trust interest to keep everything together*** and will consent to transfer instead of having it done piecemeal. We think that would be difficult and result in delay. Obviously, you know, not intending to insult Your Honor anyway, I love being in front of you. ***But the trust truly believes that the key here is expeditious litigation of the case and that breaking it up into pieces is not warranted.***

*Id.* at 104:22–105:12 (emphasis added). The Court then entered an Agreed Order transferring the

proceeding to the District Court for the Southern District of New York. The Agreed Order stated:

> This Adversary Proceeding is transferred from this Court to the United States District Court for the Southern District of New York, without prejudice to any Party's rights under that Court's Amended Standing Order of Reference Re: Title 11, No. 12-MISC-00032 (Feb. 1, 2012), ***and without prejudice to any Party's rights to move to withdraw any reference to a bankruptcy court or to seek referral to the bankruptcy court***.

Ex. F, Agreed Order ¶ 2 (Apr. 9, 2025) (emphasis added). On May 6, 2025, the transfer to the

District Court for the Southern District of New York was completed and a docket was opened for

this proceeding. *See* Case No. 1:25-cv-03702-MMG, ECF 1 (May 6, 2025).

**G.**    **The Case Is Then Automatically Transferred to the Bankruptcy Court Pursuant to the Standing Order of Reference**

Later that same day, May 6, 2025, the District Court transferred this proceeding to the

Bankruptcy Court for the Southern District of New York pursuant to the District Court's Amended

Standing Order of Reference. *See* Order, Case No. 1:25-cv-03702-MMG, ECF 2 (May 6, 2025).

## LEGAL STANDARD

This motion to withdraw the reference is brought pursuant to Section 157(d) of Title 28 of

the United States Code, which provides for two types of withdrawal, permissive and mandatory:

> The district court may withdraw, in whole or in part, any case or
> proceeding referred under this section, on its own motion or on
> timely motion of any party, for cause shown. The district court shall,
> on timely motion of a party, so withdraw a proceeding if the court
> determines that resolution of the proceeding requires consideration
> of both title 11 and other laws of the United States regulating
> organizations or activities affecting interstate commerce.

28 U.S.C. § 157 (d). "A motion to withdraw a case or proceeding under 28 U.S.C. §157(d) must

be heard by a district judge."  Fed. R. Bankr. P. 5011(a).

When determining whether to grant a motion seeking permissive withdrawal, courts in the

Second Circuit follow the test set forth in *In re Orion Pictures Corp*., 4 F.3d 1095 (2d Cir. 1993),

together with the Supreme Court's subsequent decision in *Stern v. Marshall*, 564 U.S. 462 (2011).

In sum, courts consider five factors: (1) whether the bankruptcy court has constitutional authority

to finally adjudicate the matter, (2) "whether it is legal or equitable, and considerations of [(3)]

efficiency, [(4)] prevention of forum shopping, and [(5)] uniformity in the administration of

bankruptcy law." *Orion*, 4 F.3d at 1101; *see Stern*, 564 U.S. at 469, 473.

## ARGUMENT

**I.    The Reference Should Be Withdrawn Under Section 157(d)'s "Permissive" Prong Because All *Orion* Factors Favor Withdrawal of this Post-Confirmation, Stand-Alone Adversary Proceeding Involving Private Claims Between Non-Debtors**

### A.    The Bankruptcy Court Does Not Have Final Adjudicative Authority

Here, the first factor for permissive withdrawal of the reference is met: the Trustee's own

Complaint asserts that the Bankruptcy Court lacks final adjudicative authority over his claims, and

it "expressly demands a jury trial and does not consent to a jury trial by the Bankruptcy Court."

Ex. B, Cplt. ¶ 51. The Trustee confirmed this position at the March 27 oral argument, when he

agreed with Judge Isgur's statement that this case is "going to a district judge. You demanded a jury trial." Ex. E, at 63:22–24.

Per *Stern*,[3] claims *must* be finally adjudicated by the District Court unless one of the following exceptions applies: (1) if the parties consent to final adjudication by the bankruptcy court; (2) if the claim involves a public right; or (3) if the process of adjudicating the creditor's proof of claim would resolve a counterclaim *See* 564 U.S. at 481–82, 492–93, 497–98. The Trustee's position is that none of these factors apply (*see* Ex. B, Cplt. ¶¶ 50-51), and, as set out below, none of them do. Therefore, this factor favors withdrawal.

### 1.    No Party Has Consented to Final Adjudication by a Bankruptcy Court

As noted above, the Trustee "expressly demands a jury trial and does not consent to a jury trial by the Bankruptcy Court." Ex. B, Cplt. ¶ 51. The Trustee's demand for a jury trial in District Court forecloses the consent exception under *Stern* and weighs heavily in favor of withdrawal. *See In re Levine*, 2012 WL 310944, at *3 (S.D.N.Y. Feb. 1, 2012) ("Because the Trustee demands a jury trial, for efficiency's sake, all claims, both core and non-core, should be resolved before this Court."); *M. Fabrikant & Sons, Inc. v. Long's Jewelers*, 2008 WL 2596322, at *3 (S.D.N.Y. June 26, 2008) ("absent additional considerations, withdrawing the reference is efficient because if the case goes to trial, the trial would have to be conducted in district court").

### 2.    The Trustee's Claims Involve Exclusively Private Rights

The second *Stern* exception—for claims involving public rights—does not apply because the Complaint asserts "non-core-claims, as well as core claims that carry a right to trial by jury before an Article III judge." Ex. B, Cplt. ¶ 50. Here, too, this position is both undisputed and

---

[3] Courts in the Second Circuit have held that the first factor under *Orion*—which originally looked to whether the claims were core or non-core—has since been replaced by *Stern*'s standard: whether the bankruptcy court has constitutional authority to finally adjudicate matter. *See, e.g.*, *Dynegy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd.*, 905 F. Supp. 2d 526, 529 (S.D.N.Y. 2012).

beyond dispute. As numerous courts have recognized, "[i]f the claim involves private rights, Congress cannot vest final adjudicative power over it in the Bankruptcy Court consistent with Article III, whether the claim is core or non-core." *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 467 (S.D.N.Y. 2011). "[C]ases within the reach of the public rights exception [are] those arising between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments," while "matters of private right [concern] the liability of one individual to another under the law as defined." *Stern*, 564 U.S. at 489 (cleaned up).

Here, the Complaint includes five non-core claims—for fraud, tortious interference, illegal dividend, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty (Ex. B, Cplt. ¶¶ 223-271)—each of which involves private rights. *See In re Scott*, 572 B.R. 492, 518 (Bankr. S.D.N.Y. 2017)  (holding, regarding final adjudications in bankruptcy court, Congress "could not give the right to issue such orders in 'private right' claims (e.g., tort and contract), merely because those claims involved a debtor"); *In re Celsius Network, LLC*, 2025 WL 1040643, at *3–5 (S.D.N.Y. Apr. 8, 2025) ("common-law claims for negligence, professional malpractice, breach of fiduciary duty, and negligent misrepresentation [] do not implicate public rights"); *Matter of O'Sullivan's Fuel Oil Co.*, 103 B.R. 388, 391 (D. Conn. 1989) ("Wholly private tort, contract and property cases are not at all implicated by the public rights doctrine.").[4]

---

[4] *See also Mirant Corp. v. Southern Co*., 337 B.R. 107, 113-17 (N.D. Tex. 2006) (finding unlawful dividend claim non-core under Fifth Circuit standard identical to *Orion*) (citing *Holland America Insurance Co. v. Succession of Roy*, 777 F.2d 992, 998–99 (5th Cir. 1985)); *Stern*, 564 U.S. at 490–93 (tortious interference claim "does not fall within any of the varied formulations of the public rights exception" because it is not "integrally related to particular Federal Government action"); *In re Lehman Bros. Holdings, Inc*., 480 B.R. 179, 190-91 (S.D.N.Y. 2012) (fraud and contract claims involved private, not public, rights).

Indeed, the allegations of fraud (the central theme of the Complaint) and tortious interference are not even *debtor claims*: they are common law claims that the Trustee allegedly obtained via an assignment outside of the bankruptcy proceedings. *See* Ex. B, Cplt. ¶¶ 262–63, 270–71; Ex. H, Plf.'s Ex. 2, § 2. Because common law claims between non-debtors are, by definition, non-core private rights, courts regularly withdraw the reference for such claims. *See In re the VWE Grp.*, 359 B.R. 441, 448–49 (S.D.N.Y. 2007) (withdrawing reference where non-debtor plaintiff asserted state-law malpractice claim against debtor's former lawyers); *see also In re Green*, 2012 WL 5050594, at *3 (D. Neb. Oct. 18, 2012) (granting withdrawal where "the debtor is not an indispensable party to the primary litigation").

The Trustee also asserts that the Dividend Recap and UnSub Transaction are fraudulent transfers under Title 11. Ex. B, Cplt. ¶¶ 163–222. These two assertions of fraudulent transfer (which he divides across six causes of action) also, by definition, implicate private rights. *Stern* held that fraudulent conveyance actions—while statutorily core—implicate private rights and are therefore outside the constitutional adjudicative power of a bankruptcy court absent consent. 564 U.S. at 492–93 & n.7 ("Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court"). Numerous courts agree that "a fraudulent conveyance action implicating private rights must be finally determined in an Article III forum." *Dev. Specialists*, 462 B.R. at 469. Here, the Trustee's fraudulent transfer counts seek avoidance and recovery of transfers under Bankruptcy Code §§ 544, 548, and 550 and under New York law. Ex. B, Cplt. ¶¶ 163–222. These are paradigmatic fraudulent transfer claims, and the Trustee has demanded a jury trial, reinforcing the necessity of Article III adjudication. *Id.* ¶ 51.

In short, *none* of the Trustee's claims can be adjudicated finally by the Bankruptcy Court.

3.    This Case Is Not Resolvable by a Ruling on the Cornell Defendants' Proofs of Claim

Where a claim is "a state law action independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy," the bankruptcy court cannot enter final judgment. 564 U.S. at 487. Here, the Cornell Defendants have filed proofs-of-claim, and the Trustee's position is that proof-of-claim exception does not apply: he demands a jury trial in District Court. *See* Ex. B, Cplt. ¶ 51. The Defendants agree.

**B.    The Trustee's Claims Are Legal, Not Equitable, In Nature**

The next factor under *Orion*'s permissive withdrawal test asks whether the Trustee's claims are legal or equitable in nature: "*Orion* instructs courts to consider whether the claim is legal or equitable, and consequently whether the litigants are afforded the right to a jury trial. The Seventh Amendment guarantees the right of trial by jury only 'in Suits at common law,' not in equity." *Roman Cath. Diocese*, 634 B.R. at 237. Here, the Complaint's Prayer for Relief makes clear that the Trustee's claims are legal: it seeks money damages. Ex. B, Cplt. (Prayer for Relief). Thus "these are legal, not equitable, claims, since [the] complaint requests money damages. ***Under Orion that too weights the scale in favor of granting the withdrawal motion***." *See ResCap Liquidating Tr. v. RBC Mortg. Co.*, No. 14 CIV. 4457 AKH, 2014 WL 8103896, at *3 (S.D.N.Y. July 18, 2014) (emphasis added).

Additionally, courts have recognized that the Trustee's claims (tort claims, fraudulent transfer, illegal dividend, and breach of fiduciary duty)  all fall into legal categories, particularly so, where, as here, money damages are sought:

- Fraud, negligent misrepresentation, and tortious interference with contract (Counts 10-11), *see Tarzy v. Dwyer*, No. 18 CIV. 1456 (JFK), 2019 WL 132280, at *5 (S.D.N.Y. Jan. 8, 2019) (drawing distinction between plaintiff's "fraud claim" and his "several equitable claims");

- Fraudulent transfer (Counts 1 through 6). *McCord v. Papantoniou*, 316 B.R. 113, 123 (E.D.N.Y. 2004) ("In *Granfinanciera*, the Supreme Court ruled that actions for fraudulent conveyance are legal and, thus, defendants were entitled to a jury trial notwithstanding that Congress designated such actions as core.") (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 64 (1989));

- Illegal dividend (Count 7), *see Mirant Corp.*, 337 B.R. at 119–21 (defendant "is entitled to trial by jury as to the fraudulent transfer and conveyance claims, the breach of fiduciary duty claims, and the illegal dividend claims."); and

- Breach of fiduciary duty (and aiding and abetting breach of fiduciary duty) (Counts 8 and 9), *see id.*[5]

### C.   Judicial Efficiency Favors the District Court Overseeing the Litigation

Judicial efficiency strongly supports withdrawing the reference here for multiple reasons.

---

[5] Although "[c]ourts have held that claims for breach of fiduciary duty are historically equitable in nature," *In re FKF 3, LLC*, 2016 WL 4540842, at *16 (S.D.N.Y. Aug. 30, 2016), courts find them to be legal in nature under *Orion* where, as here, "the plaintiff seeks only to recover funds attributable to the plaintiff's loss, not the defendant's unjust gain, [thus] the action seeks compensatory damages and is legal in nature." *In re HHH Choices Health Plan, LLC*, 2019 WL 1409712, at *2 (S.D.N.Y. Mar. 28, 2019) (citing *Pereira v. Farace*, 413 F.3d 330, 340 (2d Cir. 2005)). Here, the Trustee seeks punitive damages, attorneys' fees, and clearly "funds attributable to the plaintiff's loss," *id.*, such as "diminution of value of the assets transferred as part of the UnSub Transaction as a result of the UnSub Transaction" (Ex. B, Cplt. ¶ 87). *See FKF 3*, 2016 WL 4540852, at *17 ("Trustee seeks punitive damages, which is a traditional form of relief offered in the courts of law."). As one recent court in this District put it:

> Plaintiffs' prayer for relief makes clear that they seek to make good to the Plan all losses out of the [D]efendant's assets generally rather than seeking to recover particular funds or property in Defendants' possession. Accordingly, the Court holds that Plaintiffs' request that Defendants "make good" to the Plan losses suffered as a result of Defendants' alleged breaches of fiduciary duty is a legal remedy, not an equitable one.

*Khan v. Bd. of Dirs. of Pentegra Defined Contribution Plan*, 2023 WL 6237862, at *3 (S.D.N.Y. Sept. 26, 2023); *see also In re Rickels & Assocs., Inc.*, 320 B.R. 513, 517 (S.D.N.Y. 2005) (breach of fiduciary claim legal because "determination of the breach of fiduciary duty claim will not affect the allowability or priority of [plaintiff]'s proof of claim in the bankruptcy case"); *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 638 (S.D.N.Y. 2005) ("at least two circuits, and some courts in this District, have stated that 'when a breach of fiduciary duty claim is predicated upon underlying conduct which is actionable in a direct suit at common law, the jury should decide whether there has been a breach of fiduciary duty'") (citing *Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp.*, 2001 WL 863552, at *4 (S.D.N.Y. July 27, 2001)).

*See, e.g.*, *Hau Yin To v. HSBC Holdings PLC*, 2017 WL 816136, at *4 n.4 (S.D.N.Y. Mar. 1, 2017) ("In the interests of judicial economy and efficiency, the Court hereby withdraws the automatic reference of this non-core proceeding.").

*First*, courts have repeatedly concluded that where, as here, the claims at issue must be adjudicated in an Article III court, further proceedings in Bankruptcy Court would be inefficient:

> Under *Orion*, district courts should consider the most efficient use of judicial resources. **The determination as to whether the bankruptcy court could issue a final determination is "pivotal,"** *Orion*, 4 F.3d at 1102, because **if a district court must review recommendations de novo, "it would be inefficient to allow the [] proceedings to go forward, knowing that they will have to be substantially repeated."**

*Dynegy Danskammer, L.L.C.*, 905 F. Supp. 2d at 533 (emphasis added) (quoting *Dev. Specialists, Inc.*, 462 B.R. at 472).

Here, continuing in Bankruptcy Court would lead to duplicative proceedings—first before the Bankruptcy Court, and again before the District Court for "*de novo*" review and trial. *See id.* That outcome "is costly and time-consuming, and unnecessarily expend[s] judicial resources." *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 593 (S.D.N.Y. 2012); *In re Coudert Bros.*, 2011 WL 7678683, at *6 (S.D.N.Y. Nov. 23, 2011) (efficiency favored withdrawal where jury trial would ultimately require district court resolution); *In re Lenders Abstract*, 493 B.R. 385, 397 (E.D.N.Y. 2013) (same).[6]

---

[6] *See also Levine*, 2012 WL 310944, at *4 (because of "the *Stern* prohibition on final adjudication by bankruptcy courts of issues involving only private rights—here, judicial economy weighs in favor of withdrawal of the reference at this time."); *Dev. Specialists*, 462 B.R. at 467 ("[W]here the Bankruptcy Court lacks final adjudicative authority, the remaining *Orion* considerations will often tend to point toward withdrawal"); *In re Money Ctrs. of Am., Inc.*, 579 B.R. 710, 714 (S.D.N.Y. 2016); *In re Almac's, Inc.*, 202 B.R. 648, 559 (D.R.I. 1996) (granting withdrawal of the reference as to to post-confirmation, fraudulent transfer claims brought by trustee of creditor litigation trust).

Avoiding that duplication would benefit *all parties*, including the Trustee. During the oral argument on the Motion to Transfer, the Trustee stated his view that this case would proceed most efficiently if adjudicated *in a single court*: "his principal focus here is efficiently prosecuting these actions"; "it's in the trust interest to keep everything together"; and "breaking it up into pieces is not warranted." Ex. E, Mar. 27, 2025 Hearing Tr. 105:1–12 (emphasis added). Withdrawing the reference now, would mean he could "efficiently prosecut[e]" his claims (*id.*), without the risk of inefficiency arising from duplicate proceedings, given the Bankruptcy Court's lack of authority to enter a final judgment.

*Second*, this case involves non-core claims—tortious interference with contract, fraud, negligent misrepresentation, breach of fiduciary duty, and illegal dividend claims—which "are the bread and butter of district courts; bankruptcy courts do not have any 'specialized knowledge' that 'will contribute to swifter resolution of the claims at issue'" here. *Roman Cath. Diocese.*, 2021 WL 1978560, at *8 (quoting *Lehman Bros. Holdings Inc.*, 2014 WL 3583089, at *4); *see Celsius*, 2025 WL 1040643, at *7 ("Nor are the claims asserted here— . . . common-law tort claims— claims that the Bankruptcy Court has specialized familiarity of or experience with.").

The gravamen of the non-core tort claims is also central to the Trustee's assertions of fraudulent transfer, in particular his claim that the Dividend Recap was a fraudulent transfer. The Trustee asserts that the Dividend Recap was a fraudulent transfer (Counts 1 and 2) because "Cornell Capital and other insiders **obtained financing for the dividend by concealing critical financial risks**, including misstated financials, purchase price reductions, R&W insurance claims, and the CPSC investigation." Ex. G, Omnibus Resp. in Opp. to MTD, Bankr. S.D.N.Y. Dkt. 4 at 50 (emphasis added). Thus, the Trustee is asking the Court to infer a fraudulent transfer based on his non-core claim of fraud. Additionally, the Trustee's constructive fraudulent transfer counts

arising from the Dividend Recap (Counts 4 and 5) rely on an allegation that Instant Brands was subject to a risk of a recall under Section 15 of the Consumer Product Safety Act ("CPSA") (Ex. B, Cplt. ¶¶ 81, 88; Ex. G at 13), and thus his theory of the case depends on construing non-bankruptcy federal law, a primary function of the District Court.[7]

*Third*, this proceeding is still in its initial, pre-Answer, pre-merits discovery stage; therefore, withdrawal would allow the case to proceed efficiently, essentially from start to finish, in a single court. This case was filed in November last year. No answers have been filed. One defendant, Younghoon Park, has yet to be served—the Trustee on May 14, 2025, requested an amended summons for Mr. Park. *See* Docket Entry, Adv. Proc. No. 25-ap-1093 (Bankr. S.D.N.Y. May 14, 2025). Briefing on the Defendants' motions to dismiss was completed just two weeks ago on May 23, 2025, and merits discovery has been stayed since February 18, 2025. Ex. D, Feb. 18, 2025 Hearing Tr., at 14:3–8; *see id.* at 25:17–25.

When this case was in the Bankruptcy Court for the Southern District of Texas, Judge Isgur did not issue any decisions on the merits before he transferred the case to the District Court for the Southern District of New York. And the case has not been adjudicated in any respect since it was referred to the Bankruptcy Court here on May 6, 2025. No scheduling order or case management order is in place and transitioning the litigation to the District Court will not duplicate any effort or cause disruption. Courts have granted withdrawal under these circumstances. *See Celsius*, 2025

---

[7] Defendants are not currently seeking mandatory withdrawal based on the Trustee's CPSA allegations, because the Trustee's CPSA theory fails as a matter of law even without reaching the text of the CPSA (*see, e.g.*, Ex. I, Cornell Defs.' Reply Br. ISO MTD, Bankr. S.D.N.Y. Dkt. 14 at 5-6, 11 & n.4). Thus the Trustee's Complaint does not currently "require[] consideration" of the CPSA such that mandatory withdrawal is necessary under 28 U.S.C. § 157(d). The Defendants reserve the right to seek mandatory withdrawal if the posture of the case changes.

WL 1040643, at *7 (rejecting Trustee's argument that bankruptcy court familiarity favored retention where none of the related adversaries involved similar claims or parties).

By contrast, failure to withdraw the reference would lead to substantial inefficiencies and duplicated efforts. The Bankruptcy Court would spend substantial time adjudicating the Trustee's claims and the three motions to dismiss, and those decisions would later be reviewed *de novo* by the District Court. Litigants dissatisfied with the Bankruptcy Court's conclusions would appeal, requiring a second round of litigating disputed issues. Given that the Complaint is 87-pages long, and the briefing on the combined motions to dismiss is hundreds of pages, even a repeat of the motion to dismiss would request substantial effort. To the extent this case proceeds past a motion to dismiss, the duplication would become even greater still. Withdrawal, at this time, would be more efficient and less costly for both Courts and the parties.[8]

*Fourth*, this case does not implicate any Title 11 policy interest or judicial interest in centralizing bankruptcy proceedings. The Instant Brands reorganization concluded in February 2024, seven months before this adversary proceeding was filed. This adversary proceeding was the only one transferred from that bankruptcy to the Southern District of New York and there are no related Instant Brands adversary proceedings pending or expected. Thus, there is no efficiency benefit to having the Bankruptcy Court adjudicate the Trustee's claims.

---

[8] Courts in other Circuits concur. "Due to the fact that a District Court Judge must eventually preside over the jury trial in this matter, it would constitute a tremendous waste of judicial resources to permit the bankruptcy judge to continue to maintain jurisdiction over the issues presented in this litigation." *Gumport v. Growth Fin. Corp. (In re Transcon Lines)*, 121 B.R. 837, 838 (C.D. Cal. 1990). Thus, "efficiency [will be] enhanced" by an immediate withdrawal of the reference because "non-core issues predominate." *Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 295 B.R. 211, 217 (D.N.J. 2003) (quoting *In re General Teamsters, Warehousemen and Helpers Union Local 890*, 124 F.3d 999, 1008 (9th Cir. 1997)); *see also Innovasystems, Inc. v. Proveris Scientific Corp.*, 2013 WL 5539288, *5 (D.N.J. Oct. 7, 2013) (noting that "judicial resources would be most efficiently allocated by withdrawal," given the availability of magistrate judges to assist with district court proceedings).

Judge Isgur's comments during the oral argument on the Motion to Transfer confirm the lack of any judicial interest in consolidation. As the court overseeing the main bankruptcy proceedings, his court stood uniquely to benefit to the extent there were any efficiencies or judicial interests arising from having this adversary proceeding adjudicated in bankruptcy court. Judge Isgur, however, rejected the Trustee's argument that bankruptcy interests were at their "zenith" with the Trustee's claims. Ex. E, Mar. 27, 2025 Hearing Tr. 62:13–24. Judge Isgur also stated on the record that he believed the Cornell Defendants were likely to "win" the Motion to Transfer under "§ 1412"—a statute that expressly takes into account "the interests of justice." 28 U.S.C. § 1412. Thus, there was no Title 11 interest or judicial efficiency interest in having this case proceed in the *main bankruptcy court* as compared to this Court. *A fortiori*, there is no Title 11 interest or judicial efficiency interest in having this case proceed in *a different bankruptcy court* as compared to this Court.

### D.    There Is No Forum Shopping Here

The Defendants are not engaging in forum shopping; therefore, the fourth factor under *Orion* is satisfied. Forum-shopping is typically implicated when a party seeks to withdrawal the reference after litigating substantively in the bankruptcy court. *See In re Money Centers of Am., Inc. v. Sherb & Co., LLP et al.* (*In re Money Centers of Am., Inc.*), 579 B.R. 710, 713 (S.D.N.Y. 2016). Here, by contrast, the Cornell Defendants stated in the *very first* motion in this proceeding— the Motion to Transfer—that they intended to seek withdrawal of the reference. That motion expressly stated that if the case were transferred to the Southern District of New York bankruptcy court, Defendants would promptly "move to withdraw" the reference. Ex. C, Memo. ISO Mot. to Transfer, Bankr. S.D. Tex. Adv. Dkt. No. 73, at 25 (Feb. 14, 2025). The remaining Defendants consented to that Motion to Transfer. Nothing suggests that Defendants are reacting to any adverse rulings or seeking a more favorable forum. On the contrary, Defendants' approach has been

consistent and transparent throughout, and their current motion merely follows through on a course of action disclosed in advance to both the Trustee and the court. *See In re Lenders Abstract*, 498 B.R. at 397–98 (finding "no evidence that the defendant's motion to withdraw the reference is an attempt to engage in forum shopping . . . . this case involves a non-core proceeding that could have and probably should have been brought in a district court originally.").

### E.    Withdrawal Would Not Affect Uniformity in the Administration of Bankruptcy Law

This last *Orion* factor "encompasses both the uniform administration of bankruptcy law and intra-case uniformity." *Celsius*, 2025 WL 1040643, at *7. "As for intra-case uniformity, courts in this district have found that uniformity is clearly served by leaving similar, related disputes in the hand of a single court." *Id.* As discussed above, Part I.C, it would be far more efficient for the District Court to be the "single court" to adjudicate the Trustee's claims where (i) it is undisputed that this case will be tried, if necessary, before a District Court as the Trustee himself has insisted; (ii) the Trustee's claims are not being and will not be adjudicated by any other court; (iii) no other adversary proceedings were transferred to the Southern District of New York from this bankruptcy; and (iv) there are no related adversary proceedings in any court, either pending or expected.

As to uniform administration of bankruptcy law, this factor either favors withdrawal or is at the very least neutral, because the Trustee's has brought five claims "based on state law" alongside his fraudulent transfer claims. *Dynegy Danskammer, L.L.C*., 905 F. Supp. 2d at 533 ("[c]ourts routinely have found no benefit" for uniformity of bankruptcy administration "where claims are based on state law"); *Scott v. AIG Prop. Cas. Co*., 2017 WL 1380607, at *4 (S.D.N.Y. Apr. 17, 2017) ("Withdrawal of the reference would also not adversely impact the uniformity of bankruptcy administration because the adversary proceeding claims are not brought under bankruptcy law."); *see* Part I.C, above.

### F.    This Motion is Timely

The final consideration for permissive withdrawal—whether the motion is "timely"—is met here. 28 U.S.C. § 157(d). "There is no specific time limit for applications under 28 U.S.C. § 157(d) to withdraw a reference to the bankruptcy court." *VWE Grp.*, 359 B.R. at 446 (grating motion to withdraw the reference filed after motion to dismiss was filed); *see also Interconnect Tel. Serv., Inc. v. Farren*, 59 B.R. 397, 402 (S.D.N.Y. 1986) (granting motion made one year after the proceeding had commenced, discovery had been taken, and the parties had engaged in motion practice); *M. Fabrikant & Sons, Inc.*, 2008 WL 2596322, at *2 (motion timely even filed after discovery ended and days before pre-trial conference). Here, the motion to withdraw the reference is timely for the same reasons discussed in Part I.D, above. The Trustee filed this adversary proceeding on November 13, 2024, Ex. B at 1, and the Cornell Defendants promptly moved on February 14, 2025—with the joinder or consent of all Defendants—to transfer venue to the District Court for the Southern District of New York, Ex. C at 1. In that motion, the Cornell Defendants explained that if the case ultimately was transferred to the Bankruptcy Court for the Southern District of New York, the Cornell Defendants would seek to withdraw the reference. Ex. C, at 25. Four days later, on February 18, 2025, Judge Isgur stayed merits discovery. Ex. D, at 14:3–8; *see id.* at 25:17–25.

The Motion to Transfer was resolved through an agreed order entered on April 9, 2025, to transfer the case to the District Court for the Southern District of New York, while reserving all rights to seek referral to, or withdraw the reference from, the Bankruptcy Court. Ex. F at 2. The case was docketed in the District Court for the Southern District of New York, and then transferred, under the Standing Order of Reference, to this Court, on May 6, 2025. This Motion follows less than a month later—while merits discovery is still stayed, before any scheduling order has issued, and before the Defendants have answered the Complaint.

22

Courts in this district routinely find motions timely under far more developed circumstances. *See, e.g.*, *Roman Cath. Diocese*, 634 B.R. at 233; *M. Fabrikant*, 2008 WL 2596322, at \*2. Moreover, withdrawal now would not impede the administration of the bankruptcy estate. The Debtor's Chapter 11 plan was confirmed in February 2024, almost a year before this proceeding was filed. The Trustee is litigating on behalf of a post-confirmation trust. Nothing about this motion prejudices estate administration. Rather, the motion follows logically and promptly from the just-completed venue transfer and preserves judicial efficiency by seeking resolution of non-core claims before the proper Article III tribunal.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the Defendants' motion and withdraw the reference to the Bankruptcy Court for the Southern District of New York.

Dated: June 6, 2025                             Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**
/s/ *Jonathan D. Schiller*
Jonathan D. Schiller
Marc Ayala
David Barillari
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350
 Email: jschiller@bsfllp.com
            mayala@bsfllp.com
            dbarillari@bsfllp.com

*Counsel for Defendants Cornell Capital*
*LLC, Cornell Capital Partners LP, CC*
*WK Co-Invest LP, Henry Cornell,*
*Justine Chang, and Rodrigo Bravo.*

**DENTONS US LLP**
/s/ *Kristen B. Weil (by permission)*
Kristen B. Weil
Lee Whidden

1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: kristen.weil@dentons.com
      lee.whidden@dentons.com

Casey W. Doherty Jr. (*pro hac vice*)
1300 Post Oak Blvd., Suite 650
Houston, TX 77056
Telephone: (713) 658-4600
Facsimile: (713) 658-4689
Email: casey.doherty@dentons.com

*Counsel for Defendants Robert Wang, Yi Qin,*
*Christopher Larocque,*
*Agate Informatics Corp., 4060288 Canada Inc.,*
*and 7326998 Canada Inc.*

**GREENBERG TRAURIG, LLP**
*/s/ Leo Muchnik (by permission)*
Leo Muchnik
One Vanderbilt Avenue
New York, New York 10017
Tel.: (212) 801-9200
Fax: (212) 801-6400
Email: MuchnikL@gtlaw.com

Joseph P. Davis III (*pro hac vice* forthcoming)
Mian R. Wang
Alison T. Holdway (*pro hac vice* forthcoming)
One International Place, Suite 200
Boston, Massachusetts 02110
Telephone: (617) 310-6000
Facsimile: (617) 310-6001
Email: DavisJo@gtlaw.com
      WangM@gtlaw.com
      Alison.Holdway@gtlaw.com

Shari L. Heyen (*pro hac vice* forthcoming)
1000 Louisiana Street, Suite 6700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505
Email: HeyenS@gtlaw.com

24

*Counsel for Benoit Gadbois, Nicholas Hewitt, Jeffrey Kist, William Hess, Catherine Landman, Kenneth Wilkes, Lawrence McRae, and John Dubel.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 6, 2025, the foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Jonathan Schiller*

Jonathan Schiller